UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
CHRISTOPHER OSMAN,

                Plaintiff,

                                    MEMORANDUM & ORDER
      -against-                     19-CV-2210 (JS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------X
APPEARANCES
For Plaintiff:        Christopher J. Bowes, Esq.
                    Law Office of Christopher James Bowes
                    54 Cobblestone Drive
                    Shoreham, New York 11786

For Defendant:        Mary M. Dickman, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza, 5th Floor
                    Central Islip, New York 11722

SEYBERT, District Judge:

      Plaintiff Christopher Osman ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of his application for Social Security Disability Insurance Benefits. (Compl., D.E. 1, ¶¶ 1, 8.)  Presently pending before the Court are the parties' cross-motions for judgment on the pleadings. (Pl. Mot., D.E. 9; Comm'r Mot., D.E. 13.)  For the following reasons, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

BACKGROUND[1]

I.   Procedural History

On December 8, 2014, Plaintiff applied for disability insurance benefits alleging that, since November 29, 2014, cancer of the appendix/colon, chronic fatigue, weakness, and a broken leg rendered him disabled.  (R. 160, 169.)  After Plaintiff's claim was denied on April 13, 2015 (R. 85-88), he requested a hearing before an Administrative Law Judge ("ALJ") (R. 89, 93-94).  On July 13, 2017, Plaintiff, accompanied by counsel, appeared for a hearing before the ALJ.  (R. 42-56.)

In a decision dated August 22, 2017, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 13-19.)  The ALJ found that although Plaintiff suffered from severe impairments, such impairments, whether considered individually or in combination, allowed Plaintiff to retain the residual functional capacity ("RFC") to perform "light work" and that because he retained the ability to return to his past work as a water quality tester, he was not disabled.  (R. 16-19.)  The Social Security Administration's Appeals Council granted Plaintiff's request for review and, on February 12, 2019, affirmed

---

[1] The background is derived from the administrative record. ("R.", D.E. 8.)  For purposes of this Memorandum and Order, familiarity with the administrative record is presumed.  The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

the ALJ's finding that Plaintiff was not disabled.  (R. 1-9.)  The Appeals Council adopted the ALJ's findings regarding the evidentiary facts and his overall conclusions regarding whether Plaintiff was disabled.  However, the Appeals Council determined that Plaintiff's ability to perform work requiring approximately six hours of sitting and two hours of standing/walking corresponded not to light work but instead to sedentary work.  (R. 5.)  The Appeals Council thus determined that although Plaintiff's impairments prevented him from performing his past relevant work, it found that an individual having Plaintiff's vocational factors and a RFC to perform a reduced range of sedentary work could perform a significant number of jobs that exist in the national economy.  (R. 5-7.)

Where, as here, the Appeals Council reviews the decision of the ALJ, the Appeals Council's decision constitutes the final decision of the Commissioner.  See 20 C.F.R. § 404.981; see also Smith v. Berryhill, --- U.S. ----, 139 S. Ct. 1765, 204 L. Ed. 2d 62 (2019). Thus, having exhausted his administrative remedies, on April 15, 2019 Plaintiff initiated this action (see Compl.), and moved for judgment on the pleadings on November 4, 2019 (Pl. Mot.; Pl. Br., D.E. 10; Pl. Reply, D.E. 14).  On March 5, 2020, the Commissioner filed a cross-motion for judgment on the pleadings. (Comm'r Mot.; Comm'r Br., D.E. 13-1.)  Because the Court's review is limited to determining whether there is substantial evidence in

the record to support the ALJ's decision, Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citing Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)), the Court first reviews the administrative record.   The Court's review of the record proceeds as follows: first, the Court summarizes the relevant evidence presented to the ALJ; second, the Court reviews the ALJ's findings and conclusions; and third, the Court reviews the Appeals Council's decision.

I.    Evidence Presented to the ALJ

      A. Testimonial Evidence and Employment History

           At the July 13, 2017 hearing, Plaintiff testified that he was 44 years old, 5'10" tall and weighed 230 pounds.  (R. 45, 57.)  He graduated high school and attended college, is unmarried and lives alone.  (R. 45.)  Plaintiff testified that he lives in an apartment, does not "have any problems with stairs", and does housework.  (R. 46.)  According to Plaintiff, he does not drive because he "lost [his] license, DWI."  (R. 46.)  Plaintiff testified that he is not working at all and "the main reason" is because he has "to go to the bathroom a lot" and gets nauseous and vomits.  (R. 46-48.)  Plaintiff explained that he had a part of his colon removed after being diagnosed with appendix and colon cancer and "it never went back to normal after that."  (R. 46-49.)

           Plaintiff testified that he broke his leg in 2014 while working as a collector of soil and groundwater samples with a geo

4

probe.  (R. 47.)  While in the hospital for treatment of his leg, Plaintiff was diagnosed with appendix cancer and his appendix was removed.  (R. 48.)  Subsequently, he was treated for colon cancer and had a part of his ascending colon removed.  (R. 47-49.) Plaintiff testified that he also has high blood pressure, diabetes, acid reflux, and anxiety, all of which are controlled by medications.  (R. 49.)  With regard to his diarrhea, Plaintiff testified that he takes Pepto Bismol and multi-vitamins.  (R. 50.) Plaintiff testified that although he suffers bouts of diarrhea on average of fifteen to twenty times per day, he does not wear any type of protective undergarment.  (R. 51.)  During the course of an eight-hour work day, Plaintiff estimated he would need about ten to fifteen unscheduled breaks each lasting about five to fifteen minutes so he could use the bathroom.  (R. 53.)  He also testified that he gets "really bad abdominal cramps" if he tries to hold it in too long.  (R. 51.)  Plaintiff also described having difficulty sleeping because he frequently gets up to use the bathroom at night and has difficulty falling back to sleep.  (R. 52-53.)

Plaintiff also testified that although he does not have any problems sitting down, standing up, walking, using his arms, or bending over, he stated that he becomes dizzy, sweaty, and nauseous "if I'm standing too long."  (R. 51-52.)

B.   <u>Vocational Expert's Testimony</u>

A Vocational Expert ("VE") testified that Plaintiff's past work was as a "water quality tester", DOT No. 539.367-014. (R. 54.)  The VE defined such work as "light" and testified that a hypothetical person with "the same age, educational background, work history and transferable skills who can do light work, [with] no dangerous heights or dangerous machinery" could do Plaintiff's past work.  (R. 55.)  The VE also opined that if such a person is on task only eighty percent of the day or would need three unscheduled, ten-minute breaks, they could not do Plaintiff's past work.  (R. 55.)

C.   <u>Medical Evidence</u>[2]

In addition to the testimony from Plaintiff and the VE, the ALJ also reviewed Plaintiff's medical records.  Plaintiff received his medical treatment and diagnoses from: (1) Sal Inserra, M.D., orthopedic specialist; (2) Nicholas Livrieri, M.D., family practitioner; (3) Andrea Pollack, D.O., internist; (4) Daniel Feingold, M.D., colorectal surgeon; (5) Alfred Neugut, M.D.,

---

[2] The record also includes medical evidence from after June 30, 2015 and the Court has reviewed it.  However, as all parties agree and the ALJ found, Plaintiff must establish that he was disabled during the period November 29, 2014 through June 30, 2015 in order to be entitled to disability insurance benefits. Accordingly, these records are of limited probative value as discussed below.

oncologist; (6) Steven Lee-Kong, M.D.; and (7) Richard Feldstein, M.D., gastroenterologist.

Dr. Inserra is an orthopedic surgeon who performed Plaintiff's November 7, 2014 surgery to repair his right ankle fracture. Dr. Inserra also examined Plaintiff eleven times between October 29, 2014 and March 5, 2015. (R. 286-311.) Dr. Inserra's January 2015 reports as well as his March 2015 report reflect that Plaintiff "states he feels well [and] [ ] denies any pain in the ankle, he complains of weakness or fatigue of the calf muscles." (R. 286, 288, 308.) Plaintiff reported on March 5, 2015 that his right ankle "feels fine" but "his right leg feels somewhat weak and gets fatigued easily with overexertion" and "denie[d] any other specific complaints." (R. 308.) He also noted that Plaintiff's right ankle x-ray shows "complete bone healing." (R. 287, 309.)

Dr. Feingold, a colorectal surgeon, performed Plaintiff's laparoscopic right colectomy on December 11, 2014. (R. 249-51.) Notes dated December 16, 2014 from Plaintiff's follow-up appointment with Dr. Lee-Kong reflect that Plaintiff was "doing well", had "no residual cancer in the colectomy specimen, he feels well, no abd[ominal] pain, eating well, b[owel] m[ovement]s are normal, ambulating with a hard cast given his foot fracture." (R. 251.)

Concurrent with Plaintiff's visits with Dr. Inserra, Plaintiff also saw Dr. Nicholas Livrieri, a family practitioner,

on November 13, 2014, February 17, 2015, March 10, 2015, as well as on June 30, 2015, August 27, 2015, and on several other occasions well after the date last insured. (R. 312-20.) Although Plaintiff reported on February 17, 2015 that he has "frequent bowel movements" but is "feeling generally well, some fatigue, . . . insomnia, abdominal cramps; frequent BMs no diarrhea", upon examination, Dr. Livrieri noted only that Plaintiff's abdomen is "slight[ly] tender." (R. 318.)   On March 10, 2015, Plaintiff reported "feeling generally well, some fatigue . . . some anxiety, insomnia, abdominal cramps, frequent BMs no diarrhea." (R. 316.) Upon examination, Dr. Livrieri reported that "Plaintiff is obese, well nourished and well developed in no acute distress . . . . Gait is WNL." (R. 316.)   Again, on June 30, 2015, Plaintiff reported having "the same things going on" as well as intermittent vomiting. (R. 314.)   Upon examination, Dr. Livrieri noted Plaintiff is "well nourished and well developed in no acute distress. Affect is normal and appropriate. . . . Gait is WNL." (R. 314.)   Finally, on August 27, 2015, Plaintiff reported he was there because he was having sciata pain and made no mention of his bowel movements, diarrhea or vomiting.  (R. 312.)

Consistent with Plaintiff's report, upon examination, Dr. Livrieri noted Plaintiff is "well nourished and well developed in no acute distress.  Affect is normal and appropriate . . . Gait is WNL, abdomen benign." (R. 312.)   In addition, approximately

two years later, on June 22, 2017, Dr. Livrieri completed a "Crohn's & Colitis Residual Functional Capacity Questionnaire" on Plaintiff's behalf.  (R. 410-14.)   There, Dr. Livrieri noted Plaintiff reported symptoms of "chronic diarrhea", "bloody diarrhea", "abdominal pain and cramping", "malaise", "fatigue", "mucus in stool" and "vomiting" (R. 410), for which Plaintiff was taking Pepto Bismol (R. 411).  Dr. Livrieri checked the box on the form to indicate that Plaintiff is "incapable of even 'low stress' jobs" because Plaintiff experiences pain and diarrhea.  (R. 412.) Although Dr. Livrieri indicated that Plaintiff could walk one to two city blocks without rest, he opined that Plaintiff could only sit and/or stand for thirty minutes at a time before needing to get up.  (R. 412.)  In addition, during an eight-hour working day with normal breaks, Dr. Livrieri opined that Plaintiff could sit, stand, and/or walk for less than two hours.  (R. 412.)  He further noted that Plaintiff would need fifteen to twenty unscheduled restroom breaks during an eight-hour work day each lasting an average of ten minutes.  (R. 413.)  Dr. Livrieri also indicated that Plaintiff would need to lie down or rest two to three times per eight hour working day for an average of fifteen minutes each time.  (R. 413.)  In addition, Dr. Livrieri noted that Plaintiff could frequently lift or carry one to twenty pounds and could rarely lift or carry up to fifty pounds.  Finally, he noted that Plaintiff could frequently twist, stoop (bend), crouch, and climb

ladders and stairs.  (R. 413.)  He also concluded that Plaintiff would likely be absent from work due to his medical conditions for more than four days per month.  (R. 414.)

Dr. Pollack, an internist, examined Plaintiff once on January 12, 2015 having been referred by the Division of Disability Determination for a consultative internal medical examination. (R. 282.)  She noted that Plaintiff "is able to cook one to two days a week, do laundry once a week, shower and dress.  He watches TV, listens to the radio, goes out to family and socializes with friends."  (R. 282.)  Dr. Pollack further noted that, although Plaintiff was wearing a boot on his right foot and is on crutches as a result of his recent leg fracture, he appeared to be in no acute distress, used no other "assistive devices, [n]eeded no help changing for exam or getting on or off the exam table.  Able to rise from chair without difficulty."  (R. 283.)  She noted that his "bowel sounds normal."  (R. 284.)  However, she concluded: "he has a marked restriction in walking, standing, climbing stairs, kneeling, and squatting.  He has a moderate restriction in lifting and carrying.  He should avoid heights, operating heavy machinery, activities which would require heavy exertion, and activities which may put him at risk for fall."  (R. 284.)

Dr. Neugut, an oncologist, saw Plaintiff on March 31, 2015 and September 22, 2015.  (R. 352.)  During the March visit, Plaintiff reported that he was feeling well that day but was

experiencing insomnia and some fatigue.  (R. 352-55.)  He also
reported that before his surgery he would normally have three bowel
movements per day but now he was having many more, and they were
mostly soft.  He also described some "occasional abdominal pain"
and "occasional blood in his stool."  (R. 352.)  Upon examination,
Dr. Neugut found Plaintiff to have "a soft non-tender/non-
distended abdomen," with normal bowel sounds and no masses."  (R.
354.)  At Plaintiff's September 2015 visit to Dr. Neugut, Plaintiff
reported he has "some fatigue, insomnia.  Feels flushed if out on
the street for a while" and has "many more, mostly soft" bowel
movements per day than he had "[b]efore the surgery."  (R. 347.)
Upon examination, Dr. Neugut noted that Plaintiff's abdomen was
"soft, non-tender/non-distended.  Bowel sounds norm. . . ."  (R.
349.)

       On referral from Dr. Livrieri, Dr. Feldstein, a
gastroenterologist, examined Plaintiff on February 12, 2016,
March 23, 2016, and April 29, 2016.  (R. 397-402.)  Plaintiff
reported changes in his bowel movements at the February visit and,
upon examination, Dr. Feldstein noted that Plaintiff's abdomen is
"soft" and "non distended" and explained that the "likelihood of
recurrent BM's secondary to shortened colon/transit time."  (R.
397.)  At the March 23, 2016 follow-up appointment with Dr.
Feldstein, Plaintiff complained of heartburn, and occasional
nausea with vomiting.  (R. 399.)  Upon examination, Dr. Feldstein

11

described Plaintiff's abdomen as "soft" and "non distended" and "no tenderness" and referred Plaintiff for a colonoscopy.  (R. 399-400.)   On April 29, 2016, Dr. Feldstein reviewed the colonoscopy results with Plaintiff and advised Plaintiff to follow a "high fiber diet" with "fiber supplementation" and recommended a follow up colonoscopy be done in three years.  (R. 401-02.)

II.   The ALJ's Decision

The ALJ found that Plaintiff met the insured-status requirements of his claim through June 30, 2015.  (R. 15.)  The ALJ then applied the familiar five-step disability analysis and concluded that Plaintiff was not disabled from November 29, 2014, the alleged disability-onset date, through June 30, 2015.  (R. 16-19); see 20 C.F.R. § 404.1520.  At steps one through three, the ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date (R. 15); (2) Plaintiff had severe impairments consisting of "post laproscopic partial colectomy for colon cancer on December 11, 2014, post ORIF [Open Reduction Internal Fixation] for a right leg fracture on November 7, 2014 and diabetes mellitus (R.15); and (3) Plaintiff's impairments, individually or in combination, did not meet or medically equal the severity of any of the impairments listed in Appendix 1 of the Social Security regulations (R. 16).

The ALJ then determined that Plaintiff had the RFC "to perform light work . . ., as requiring approximately 6 hours of

12

sitting and approximately 2 hours of standing and/or walking allowing for normal breaks, except that he can never be exposed to dangerous machinery or heights." (R. 16.) After comparing Plaintiff's RFC with the physical and mental demands of a water quality tester, the ALJ found that Plaintiff was able to perform his past relevant work as a water quality tester as it is generally performed throughout the national economy as light work. (R. 19.) As a result, the ALJ determined that Plaintiff was not disabled. (R. 19.)

A. The ALJ's RFC Determination

The ALJ found that Plaintiff has the RFC to "perform light work, . . . as requiring approximately 6 hours of sitting and approximately 2 hours of standing and/or walking allowing for normal breaks, except that he can never be exposed to dangerous machinery or heights." (R. 16.) In reaching this conclusion, the ALJ reviewed--and credited--Plaintiff's testimony that he "has no problems sitting, standing, walking or using his arms and no problems bending but he does get dizzy, sweaty and nauseous." (R. 17.) The ALJ also relied on Plaintiff's testimony that he "lives alone in an apartment and has no issues with stairs," and "does do housework" (R. 16-17).

The ALJ also referenced the consultative internal medical examination records from Dr. Andera Pollack, who opined that Plaintiff "has a marked restriction in walking, standing,

13

climbing stairs, kneeling and squatting." (R. 17.) However, the ALJ afforded "very little weight" to Dr. Pollack's opinion in this regard because it was contrary to a March 5, 2015 report from Plaintiff's treating physician, Dr. Inserra, who indicated that Plaintiff stated "his right ankle feels fine and he denie[d] any pain, swelling or buckling; he is alert and comfortable and ambulating independently with normal gait and range of motion is normal . . . ." (R. 17.) The ALJ gave "some weight" to Dr. Pollack's opinion that Plaintiff has a moderate restriction in lifting and carrying and should avoid heights, operating heavy machinery and activities requiring heavy exertion or which my put him at risk for a fall." (R. 17.)

The ALJ then explained that "[f]ar greater weight is given by the undersigned to the opinion of Dr. Inserra, an orthopedic specialist who has been treating the [Plaintiff] and has had the opportunity to examine him on many occasions. (R. 17.) Indeed, the ALJ reviewed the medical reports from Dr. Inserra from November 21, 2014, December 4 and 22, 2014, January 5, 2015 and January 15, 2015 and noted that in each of these reports that Plaintiff indicated that he was "doing well" and "denied pain or other specific complaints." (R. 18.)

Next, the ALJ addressed the opinion of Dr. Livieri who completed the Crohn's & Colitis Residual Functional Capacity Questionnaire on June 22, 2017 and opined that Plaintiff, "in an

14

8 hour workday--can sit less than 2 hours and stand/walk less than 2 hours; lift/carry up [to] 20 pounds frequently; frequently twist, stoop (bend), crouch and climb ladders and stairs." (R. 18.)  Dr. Livieri also indicated that Plaintiff "experiences pain o[r] other symptoms severe enough to frequently interfere with attention and concentration" and that Plaintiff "requires a job which permits shifting of positions at will from sitting, standing or walking and that he requires unscheduled restroom breaks lasting 10 minutes, 15-20 times a day and needs to lie down or rest at unpredictable intervals 2-3 times per day." (R. 18.)  Dr. Livieri also indicated that, on average, Plaintiff would likely be absent from work more than four days per month as a result of his impairments or treatment. (R. 18.)  The ALJ assigned "very little weight" to the opinion of Dr. Livieri concerning Plaintiff's gastrointestinal-related limitations because: (1) Dr. Livieri is a family practitioner and not a gastroenterologist; and (2) there is "no objective medical support for limiting sitting and standing/walking to less than 2 hours each during an 8-hour workday, requiring frequent shifting of positions; requiring unscheduled breaks, 15-20 times a day, and missing work more than four days per month as those limitations had to have been based solely on [Plaintiff]'s subjective complaints." (R. 18.)  The ALJ discounted Dr. Livieri's opinions particularly given Plaintiff's

15

hearing testimony that "he has no limitations in sitting, standing, walking or using his arms. . . ."  (R. 18.)

Finally, the ALJ concluded that the RFC assessment is supported by: (1) the opinion of Dr. Pollack that Plaintiff "has a moderate restriction in lifting and carrying; should avoid heights and should avoid activities requiring heavy exertion or which may put him at risk of fall"; (2) the opinion of Dr. Inserra that Plaintiff "was doing well" and was "ambulating independently with normal gait" (R. 18-19); (3) the opinion of Dr. Livieri that Plaintiff "can lift/carry up to 20 pounds frequently and frequently twist, stoop(bend), crouch and climb ladders and stairs;" and (4) Plaintiff's own description of a fairly broad range of daily activities including household chores and that he "has no problems sitting, standing, walking, or reaching."  (R. 19.)

III. Appeals Council's Decision

On February 12, 2019, the Appeals Council issued the final decision of the Commissioner.  (R. 1-9.)  On December 27, 2018, the Appeals Council notified Plaintiff and his attorney that it would consider a statement about the facts and the law in the case or additional evidence.  (R. 4.)  A statement was submitted and the Appeals Council considered it.  (R. 4.)

In affirming the ALJ's finding that Plaintiff was not disabled, the Appeals Council concluded that although it "does not fully agree with the [ALJ]'s findings regarding the claimant's

residual functional capacity or whether the claimant was capable of performing his past relevant work at any time through the date last insured" (R. 4-5), Plaintiff "had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)." (R. 5.) Having made such finding, the Appeals Council then considered whether the Agency met its burden to show that "a significant number of jobs exist in the national economy which [claimant] could perform" and determined that "there were a significant number of jobs in the national economy that the claimant could have performed through the date last insured." (R. 5-6.)

DISCUSSION

I.   Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether Plaintiff is entitled to disability benefits. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

To determine if substantial evidence exists to support the ALJ's findings, this Court must "examine the entire record,

17

including contradictory evidence and evidence from which conflicting inferences may be drawn." <u>See</u> <u>Brown v. Apfel</u>, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).

II.  <u>Analysis</u>

Plaintiff argues that the ALJ erred in finding that Plaintiff is not disabled because: (1) he failed to consider all of the medical evidence regarding Plaintiff's impairment, most notably the opinions of Dr. Richard Feldstein; (2) the adverse credibility determination is not supported by the record; and (3) his assignment of "very little weight" to the opinion of the treating family practitioner, Dr. Livieri, was incorrect. (<u>See</u>, Pl. Br. and Pl. Reply.)  The Commissioner responds that the ALJ applied the correct legal standards and the decision is supported by substantial evidence. (<u>See</u>, Comm'r Br.)  The Court addresses each of these arguments separately.

A.  <u>The ALJ Considered all of the Medical Evidence</u>

Plaintiff contends that the ALJ failed to consider all of the medical evidence of Plaintiff's impairment, specifically the medical records supplied by Dr. Richard Feldstein, a gastroenterologist who examined Plaintiff on February 15, 2015. (Pl.'s Br. at 15-17.)  The Court disagrees.

18

As the opinion makes clear, the ALJ gave "careful consideration to all of the evidence" in concluding that that Plaintiff was not disabled within the meaning of the Act from November 29, 2014 through June 30, 205. (R. 13.) Thus, Plaintiff's assertion that the ALJ failed to consider all of the medical evidence is incorrect. Although the medical records provided by Dr. Feldstein are not expressly referenced in the ALJ's opinion, the ALJ makes clear that "all of the evidence" was given careful consideration. (R. 13.) Moreover, because Dr. Feldstein first examined Plaintiff in February 2016, some eight months *after* Plaintiff's date last insured, it is of little probative value as to whether Plaintiff was entitled to disability insurance benefits as of June 30, 2015. Although an ALJ must consider medical opinions given after a claimant's date last insured if "such opinions are relevant to h[is] condition prior to that date" Dailey v. Barnhart, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003), Dr. Feldstein's opinions in February, March and April 2016 are not relevant to Plaintiff's condition on June 30, 2015, particularly given that Dr. Feldstein makes clear that Plaintiff's condition, as reported by Plaintiff at each visit, reflects that date.[3] (R. 397-405.) Importantly, Dr. Feldstein's notes reflect that when

---

[3] Notably, Dr. Feldstein also indicated that, at each of these visits upon examination, Plaintiff's abdomen was soft and nondistended with no tenderness. (R. 397-405.)

Plaintiff first visited him in February 2016, he complained of "changes" in his "bowel habits" (R. 397), suggesting that the gastric distress of which Plaintiff complained had worsened. Thus, because Dr. Feldstein's opinions of Plaintiff's condition were limited to his observations on February 12, 2016, March 23, 2016 and April 29, 2016, together with the fact that Dr. Feldstein did not opine on Plaintiff's condition prior to June 30, 2015, the ALJ's decision was appropriate, whether or not he referenced Dr. Feldstein's opinions.

B.   The ALJ's Adverse Credibility Determination is Supported by the Record

Plaintiff next contends that the ALJ's adverse credibility determination is not supported by the record. Plaintiff's argument that:

> Mr. Osman's unchallenged testimony regarding the nature, frequency, and duration of his bowel movements is supported by this colectomy but it is further explained by treating gastroenterologist Dr. Richard Feldstein, who explains that his diarrhea and frequent bowel movements are explainable by his shortened digestive tract following surgery in 2014

(Pl. Br. at 13) misses the mark. Plaintiff's testimony regarding the nature, frequency and duration of his bowel movements was not unchallenged. Rather, the medical evidence and Plaintiff's testimony make clear that his gastric problems were not so severe as to render him disabled as of June 30, 2015. Indeed, following the 2014 colectomy through June 2015, Plaintiff did not complain

20

of frequent bowel movements or diarrhea.  Rather, the first time Plaintiff complains of frequent bowel movements is to Dr. Neugut in September 2015.  (R. 347.)

Thus, the ALJ correctly questioned Plaintiff's credibility given that his report of symptoms was not consistent with the observations of the medical professionals.  Although Dr. Feldstein opined in February 2016 that Plaintiff's shortened colon as a result of his 2014 colectomy could cause the gastric problems Plaintiff described, there is nothing in the record that suggests that Plaintiff complained of such problems to any of his medical providers during the relevant time period.  This is a sufficient reason to question Plaintiff's credibility.  "Thus, the ALJ's credibility determination is entitled to 'great deference' as it was not 'patently unreasonable.'"  Thompson v. Comm'r of Soc. Sec., No. 16-CV-6968, 2018 WL 1558270, at *1 (E.D.N.Y. Mar. 28, 2018) (quoting Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997)).  Here, the ALJ properly evaluated Plaintiff's testimony in considering whether his statements relating to the intensity, persistence, and limiting effect of his symptoms was consistent with the medical records.  Indeed, the ALJ credited Plaintiff's own statements that he was capable of performing daily tasks in finding him capable of performing "light work" (R. 18-19), but which the Appeals Council reassessed as "sedentary work" (R. 5).

C.    The ALJ Properly Weighed the Opinion of Dr. Livieri

Plaintiff contends that the ALJ was "simply incorrect" to exclude the opinion of treating family physician Dr. Livieri because he was not a gastroenterologist. (Pl. Br. 17.) However, Plaintiff mischaracterizes the ALJ's opinion. The ALJ's opinion is clear that he did not exclude the opinion of Dr. Livieri. (R. 18-19.) Rather, the ALJ gave "very little weight" to Dr. Livieri's June 22, 2017 report because there was "no objective medical support" for his findings that Plaintiff was: (1) limited to sitting and standing or walking to less than two hours each during an eight-hour work day; (2) requiring frequent shifting of positions; (3) requiring fifteen to twenty unscheduled breaks per day; and (4) missing more than four work days per month. (R. 18.) Moreover, given that the report at issue was prepared on June 22, 2017, over two years after the date Plaintiff was last insured, the ALJ's weighting was reasonable. Finally, the ALJ credited Dr. Livrieri's opinion that Plaintiff "can lift/carry up to 20 pounds frequently and frequently twist, stoop (bend), crouch and climb ladders and stairs" in assessing Plaintiff's RFC. (R. 18-19.) Thus, as is readily apparent, the ALJ did not exclude Dr. Livrieri's opinion.

The ALJ also did not violate the "treating physician's rule" because he articulated his reasons for declining to afford controlling weight to certain portions of Dr. Livrieri's reports.

22

The treating physician's rule provides that the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). The regulations state:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (emphasis supplied).[4] Nevertheless, the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record." Molina v. Colvin, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (internal quotation marks and citations omitted). When an ALJ does not afford controlling weight to the opinion of a treating physician, the ALJ must consider several factors: "(1) the length of the treatment relationship and frequency of the examination; (2) the nature and

---

[4] "While the Act was amended effective March 27, 2017 [to eliminate the treating physician rule], the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." Williams v. Colvin, No. 16-CV-2293, 2017 WL 3701480, at *1 (E.D.N.Y. Aug. 25, 2017); see also 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist." <u>Schnetzler v. Astrue</u>, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008).  The ALJ must also set forth "'good reasons' for not crediting the opinion of a [plaintiff's] treating physician." <u>Id.</u>  However,

> [a]n application of the treating physician rule is sufficient when the ALJ provides 'good reasons' for discounting a treating physician's opinion that reflect in substance the factors as set forth in [Section] 404.1527(d)(2), even though the ALJ declines to examine the factors with explicit reference to the regulation.

<u>Crowell v. Comm'r of Soc. Sec.</u>, 705 F. App'x 34, 35 (2d Cir. 2017) (summary order) ("While the ALJ did not explicitly discuss the treating physician rule, he nonetheless stated that [the physician's] opinion . . . was contradictory to the rest of the record evidence.").

Here, although the ALJ did not necessarily recount the factors (<u>see</u> 20 C.F.R. § 416.927) in assigning "very little weight" to some of Dr. Livieri's opinions, the Second Circuit has made clear that the ALJ need not produce a "slavish recitation of each and every factor [set forth in 20 C.F.R. § 404.1527(c)] where the ALJ's reasoning and adherence to the regulation are clear." <u>See</u> <u>Atwater v. Astrue</u>, 512 F. App'x 67, 70 (2d Cir. 2013); <u>see</u> <u>also</u>

Khan v. Astrue, No. 11-CV-5118, 2013 WL 3938242, at *15 (E.D.N.Y. July 30, 2013).  Rather, the ALJ need only apply "the substance of the treating physician rule."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

Here, in reaching his conclusions, the ALJ discussed the opinions of several sources.  The ALJ assigned "some weight" to Dr. Pollack's opinion that Plaintiff has a moderate restriction in lifting and carrying and should avoid height, and operating heavy machinery and activities which require heavy exertion or which may put him at risk for a fall.  (R. 17.)  The ALJ assigned "greater weight" to the opinion of Dr. Inserra who treated Plaintiff eleven times from October 29, 2014 through March 5, 2015.  (R. 285-311.) Interestingly, Plaintiff reported "feeling fine" and never complained of any gastric distress during his visits with Dr. Inserra.  (R. 285-311.)  The ALJ gave this opinion greater weight because he examined Plaintiff "on many occasions".  (R. 17.)  The ALJ assigned "very little weight" to opinions of Dr. Livieri concerning Plaintiff's gastrointestinal-related limitations finding that there is "no objective medical support" for the physical restrictions recommended by Dr. Livieri together with the fact that Dr. Livieri is a general family practitioner and not a gastroenterologist.  (R. 18.)  Thus, the ALJ's determination is supported by substantial evidence.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's cross-motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (D.E. 13) is GRANTED, and Plaintiff's motion for Judgment on the Pleadings pursuant to Federal Rule 12(c) (D.E. 9) is DENIED.

The Clerk of the Court is directed to enter judgment in accordance with this Memorandum and Order and to mark this matter CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     June __8__, 2020
           Central Islip, New York

26